1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LORNAVENUS P. CUBERO, | ) | 1:06cv0682 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Lornavenus P. Cubero ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

_____

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On October 5, 2006, the Honorable Oliver W. Wanger reassigned the case to the magistrate for all purposes.  Due to the elevation of Judge Lawrence J. O'Neill to District Court judge, this case was reassigned to the undersigned for all purposes on August 21, 2007.

1

## FACTS AND PRIOR PROCEEDINGS[2]

2    Plaintiff filed for disability insurance benefits on November 18, 2003, alleging disability

3  since August 11, 2003, due to "dizziness, headaches, ear plug, right sided weakness with slurred

4  speech 3-4 times short spells a day." AR 52-54, 62-71. After an initial denial and denial on

5  reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR

6  34-37, 40-44, 45. ALJ Sean Teehan held a hearing on September 5, 2005, and denied benefits on

7  October 27, 2005. AR 252-290, 9-19. The Appeals Council denied Plaintiff's request for review

8  on April 13, 2006. AR 5-8.

9    Hearing Testimony

10    ALJ Teehan held a hearing on September 7, 2005, in Fresno, California. Plaintiff

11  appeared with her attorney, Robert Christenson. Plaintiff's husband Rudolpho Cubero and

12  vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 252.

13    Plaintiff testified that she was born in 1949 and received a Bachelor's degree in nursing

14  from a four year college. AR 258. She stopped working as a nurse in August 2003 at the

15  Porterville Development Center and is currently on retirement disability. AR 260.

16    Plaintiff explained that she had a stroke that affected the right side of her body. She also

17  has tremors and seizures. AR 267. She gets tremors in her hands and feet about two to three

18  times per week and they last all day. She has to lie down and rest for one to two hours. She has

19  not had a seizure in eight months. AR 268. She has trouble walking because her right foot drags

20  and has problems standing. She also has problems with her memory. AR 269. Plaintiff testified

21  that she could walk about ten feet before needing to hold onto something or someone, lift three to

22  five pounds, and stand for about 30 minutes. AR 269-272. In addition to taking rest breaks for

23  her tremors, Plaintiff takes three to four breaks per day, for about an hour each. AR 272. She

24  sometimes has trouble grasping things with her right hand. AR 274. Plaintiff also had diabetes

25  that is sometimes controlled with medication. AR 275.

26

27  _____

28    [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that she has dizzy spells everyday and has trouble understanding.  She has more bad days than good days, and on a bad day, she lays down almost all day.  AR 273.  Although she used to be able to crochet, she can no longer do so.  AR 275.  She can cook once or twice a day.  AR 276.  Her husband does the grocery shopping.  Plaintiff has a driver's license but has not driven lately because of her seizures.  AR 276.

Plaintiff goes to church on Sundays and watches television for about 30 minutes a day.  She does not clean the house anymore.  AR 278.

Plaintiff's attorney questioned her husband, Rudolpho Cubero.  He testified that they had been married for 28 years.  Since Plaintiff's stroke, she cannot talk like she used to, has shaking in her right arm and feet, and is confused most of the time.  She cannot walk more than a few feet before needing to grab the wall and she has to hold his hand to go to the store or church.  AR 280-282.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work experience.  This person could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand for six hours out of an eight hour day, and could walk for six hours out of an eight hour day.  This person could sit for six hours in an eight hour day and would have unlimited ability to push and pull.  This person could climb ramps and stairs frequently, never climb ladders, scaffolds and ropes, and occasionally balance.  This person could frequently stoop, kneel, crouch and crawl and had to avoid even moderate exposure to machinery and heights.  AR 283.  The VE testified that this person could not perform Plaintiff's past work but could perform other light positions.  Such positions included nursing supervisor in a community hospital or health nursing center, convalescent hospital nurse, and school nurse.  AR 284-285.

If this person had sedentary abilities to lift, carry, stand, walk, sit, push and pull, this person could perform work as a nursing consultant.  AR 285-287.

If this person could lift three to five pounds, could not stand for any length of time, could walk approximately ten feet, and had the same postural and environmental limitations set forth above, this person could not perform any work.  AR 287.

3

1    Plaintiff's attorney asked the VE to assume a person with a light residual functional

2    capacity ("RFC") who needed to take rest breaks three or four times a day for an hour at a time.

3    This person could not perform any work.  AR 287-288.

4    If this person had difficulty concentrating and paying attention for two-hour increments,

5    this person could not perform any work.  AR 288.

6    Medical Record

7    An August 2003 scan of Plaintiff's brain showed prior ischemic foci, including both basal

8    ganglia, older than two weeks, no recent infarction and no significant carotid stenoses.  AR 165-

9    166.

10    On October 14, 2003, Plaintiff underwent a consultive examination by James M. Mohs,

11    M.D.  Plaintiff reported that she suffered a stroke in 2001 but recovered from most of her

12    symptoms and returned to work.  In August 2003, she developed weakness of her right side

13    associated with an early morning tremor that would usually go away when she ate something

14    sweet.  Her sugars were never low at those times.  Plaintiff reported that she continued to work as

15    a registered nurse for Porterville Developmental Center.  AR 128-129.  She denied seizures,

16    confusion, and memory loss but indicated that she is sometimes unsteady in gait.  She attributed

17    this to her dizziness.  AR 129.

18    On examination, Plaintiff was alert and oriented with normal speech.  She gave a very

19    good history.  She had good strength in her upper and lower extremities but had a little bit of a

20    shuffling gait.  She had some difficulty tandem walking which she attributed to dizziness.  AR

21    130.  Dr. Mohs diagnosed an eight year history of type 2 diabetes without evidence of

22    hypoglycemia, a previous cerebral vascular accident ("CVA") with right facial weakness and

23    right extremity weakness, recent weakness and tremor in the early morning hours which resolves

24    spontaneously or with food.  AR 130.  He did not know what caused her tremors but did not

25    believe it was related to blood sugar despite her response to food.  He suggested further testing.

26    AR 131.

27    On October 30, 2003, Plaintiff underwent an outpatient neurologic consultation by Bruce

28    Dobkin, M.D., at the UCLA Medical Center.  Plaintiff related a history of hypertension, diabetes

4

and a stroke in 2001.  On examination, Plaintiff was alert and oriented, although her processing was a bit slow.  Bulk and tone were normal and she had 5/5 strength in all groups.  Dr. Dobkin reviewed Plaintiff's diagnostic studies and opined that her episodes of left-sided numbness and hand shaking were consistent with either a migraine or a focal seizure.  He leaned towards a focal seizure.  Her medications for diabetes and high blood pressure may not be kicking in, especially in the morning, which would predispose her to either migraine or focal seizure.  He increased her Neurontin to 600 mg, three times a day and suggested further medication changes and tests if that did not help.  He urged her to exercise to help with her risk factors.  AR 132-133.

On December 9, 2003, Plaintiff reported to Jasvir S. Sidhu, M.D., that she started feeling dizzy a few days prior and was having seizures every day.  Dr. Sidhu adjusted her medications.  AR 162.

In a December 26, 2003, letter, Wilbur Suesberry, M.D., explained that he first saw Plaintiff in June 5, 2001, when she had no apparent residual effects of her CVA except for slow speech without slurring.  Plaintiff returned in May 2003 and complained of vertigo.  When she returned two weeks later, she was asymptomatic and Dr. Suesberry has not seen her since.  He indicated that he only saw Plaintiff for complaints of vertigo and was not aware of any headaches, right-sided weakness, slurred speech or concentration problems.  AR 137.

State Agency physician James V. Glaser, M.D., completed a Physical Residual Functional Capacity Assessment form on February 9, 2004.  He opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about six hours in an eight hour day, and could sit for about six hours in an eight hour day.  She could frequently climb ramps and stairs but could never climb ladders, ropes or scaffolds.  She could occasionally balance and frequently stoop, kneel, crouch, and crawl.  She had to avoid even moderate exposure to hazards such as machinery and unprotected heights.  AR 139-146.

X-rays of Plaintiff's left shoulder taken on February 13, 2004, revealed degenerative arthritic changes involving the A-C joint.  AR 159.

En EEG performed on March 9, 2004, was normal and showed no epileptiform activity.  AR 179.

1    In May 2004, Plaintiff reported that she was having seizures everyday.  AR 234.

2    On June 19, 2004, Dr. Sidhu indicated that Plaintiff started a new medication and

3    although her seizures improved, she was still having some.  AR 157.

4    State Agency physician Brian Ginsburg, M.D., completed a Physical Residual Functional

5    Capacity Assessment form on July 26, 2004.  He opined that Plaintiff could lift 20 pounds

6    occasionally, 10 pounds frequently, could stand and/or walk about six hours in an eight hour day,

7    and could sit for about six hours in an eight hour day.  She could frequently climb ramps and

8    stairs but could never climb ladders, ropes or scaffolds.  She could occasionally balance and

9    frequently stoop, kneel, crouch, and crawl.  She had to avoid all exposure to hazards such as

10   machinery and unprotected heights.  AR 184-191.

11   On August 16, 2004, Plaintiff saw Christopher de Giorgio, M.D., a neurologist at UCLA

12   School of Medicine.  She reported occasional tingling of the right side, but no overt seizure

13   activity, such as speech arrest or twitching of the face.  A review of previous labs indicated that

14   she has evidence of abnormal signal in the vasoganglia bilaterally, but no hemispheric

15   abnormalities.  Dr. de Giorgio assessed simple, partial seizures with speech arrest, tingling in the

16   right side of the body and twitching of the right arm, well controlled since May, moderate

17   obesity, and good prophylaxis for stroke.  He readjusted her medications.  AR 214-215.

18   In September 2004, Plaintiff reported having dizziness.  AR 226.

19   On October 4, 2004, Dr. de Giorgio wrote a letter to Dr. Sidhu in which he indicated that

20   Plaintiff continued to do well.  She has vascular Parkinson's characterized by narrow-based

21   shuffling gait and some postural instability.  She was successfully tapering off Depakote and

22   Neurontin and was responding to a low dose of Celexa.  He suggested trying her on a medication

23   for her vascular Parkinson's.  AR 212-213.

24   On January 16, 2005, Dr. Sidhu completed a Physician's Report of Disability for

25   CalPERS.  He indicated that she has been unable to work since August 11, 2003, and that she

26   was currently substantially incapacitated from work due to daily seizure activity and unsteady

27   gait.  He opined that this incapacity was permanent.  AR 239-240.

28

On February 10, 2005, Dr. Sidhu completed a questionnaire related to Plaintiff's claim for disability through Guarantee Trust Life Insurance Company.  He opined that it was unlikely that Plaintiff could return to work.  She continued to experience daily dizziness, seizure-like activity and memory changes.  AR 236.  On a separate statement, he indicated that Plaintiff could return to work in 12 to 24 months.  AR 237.

On June 11, 2005, Dr. Sidhu completed another statement for Guarantee Trust Life Insurance Company.  He opined that Plaintiff could never return to work and that her progress was unimproved.  AR 235.  He diagnosed seizures and unsteady gait.  AR 235.

Plaintiff saw Dr. de Giorgio on June 13, 2005.  She reported that she had been seizure free since February 2005, but reported feeling slow and dizzy. He diagnosed vascular Parkinsonism or secondary Parkinsonism, simple partial seizures, left hemisphere onset, right arm and face, hypertension, marginally controlled and stroke, left MCA distribution.  AR 241. He also opined that she had multiple risk factors for cerebrovascular disease.  AR 241.

Dr. de Giorgio summarized Plaintiff's recent treatment in a letter to Dr. Sidhu dated June 13, 2005.  She reported persistent "slowness" in her movements but no seizures for the past four months.  On examination, she had psychomotor slowing and a shuffling gait.  Her mini-mental status exam showed problems with executive processing and calculations, but relatively intact recent memory and orientation.  She had a fine tremor with posture but none at rest.  She had profound bradykinesia and could not open and close her hands rapidly, and could not say "la, la, la, la" rapidly.  Dr. de Giorgio indicated that overall, her mental thinking and mental clarity are improved on medication.  Her seizures were doing very well and she has been seizure free on a high dose of Keppra.  AR 242-243.

Plaintiff saw Dr. de Giorgio on July 11, 2005.  She reported that she was walking better, but she was difficult to interpret because although she indicated she was feeling better and could process information better, she was not sure that the medication was helping.  On examination, her speech was slightly slowed but she was not dysarthic.  Her gait was narrow with a slight shuffling, but was significantly increased in speed and stability.  Postural stability was also improved.  He assessed her with status post left hemispheric stroke, vascular Parkinson's disease

1   with mild bradykinesia, but no evidence of true Parkinson's, and severe hypertension.  Dr. de

2   Giorgio indicated that she was doing very well in terms of her seizures and has been seizure-free.

3   He adjusted her medications and instructed Plaintiff to continue her weight loss program.  AR

4   208-209.

5           ALJ's Findings

6           The ALJ found that Plaintiff had the severe impairments of a history of a CVA,

7   Parkinsonian Syndrome and seizures.  After reviewing the record, the ALJ determined that

8   Plaintiff retained the RFC to lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk

9   for six hours in an eight hour day, and sit for six hours in an eight hour day.  She could not climb

10  ladders, ropes or scaffolds, but could climb ramps and stairs.  She could occasionally balance and

11  had to avoid exposure to hazards.  AR 13.  The ALJ determined that she could not return to her

12  past work.  However, based on the testimony of the VE, he found Plaintiff capable of performing

13  a significant number of light and sedentary positions.  AR 17-18.

14                          **SCOPE OF REVIEW**

15          Congress has provided a limited scope of judicial review of the Commissioner's decision

16  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

17  the Court must determine whether the decision of the Commissioner is supported by substantial

18  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

19  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

20  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

21  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

22  401.  The record as a whole must be considered, weighing both the evidence that supports and

23  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

24  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

25  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

26  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

27  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

28

1  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

2  Cir. 1987).

3  **REVIEW**

4  In order to qualify for benefits, a claimant must establish that he is unable to engage in

5  substantial gainful activity due to a medically determinable physical or mental impairment which

6  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

7  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

8  such severity that he is not only unable to do her previous work, but cannot, considering his age,

9  education, and work experience, engage in any other kind of substantial gainful work which

10 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

11 The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

12 Cir. 1990).

13 In an effort to achieve uniformity of decisions, the Commissioner has promulgated

14 regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

15 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ

16 found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

17 her disability; (2) has an impairment or a combination of impairments that is considered "severe"

18 (history of a CVA, Parkinsonian Syndrome and seizures) based on the requirements in the

19 Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of

20 impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

21 Regulations No. 4; (4) cannot perform her past relevant work; (5) but retained the RFC to

22 perform a significant number of light and sedentary positions.

23 Here, Plaintiff argues that the ALJ (1) failed to give adequate reasons for rejecting her

24 husband's testimony; (2) erred in finding her not credible; and (3) erred by failing to adopt the

25 opinion of Plaintiff's treating physician, Dr. Sidhu.

26

27

28

[3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1
## DISCUSSION

2
A.    Third Party Testimony

3
          Plaintiff argues that the ALJ failed to give adequate reasons for rejecting her husband's

4
testimony.  She believes that the medical evidence supports his testimony and contends that the

5
"generalized" rejection was not sufficient.

6
          Lay witness testimony as to a claimant's symptoms is competent evidence which the

7
Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The

8
ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that

9
are germane to each witness."  *Id.*

10
          In his decision, the ALJ stated that he considered Mr. Cubero's testimony that Plaintiff's

11
arms shake, that her concentration and memory are poor and that she needs to hold his hand to

12
walk.  AR 14.  However, he determined that his statements were not totally supported by the

13
clinical, radiological or laboratory findings.  AR 14.  The ALJ explained that although there are

14
multiple references to Plaintiff's complaints of seizures, "there is no definitive finding of

15
claimant having actual seizures."  AR 14.  The ALJ summarized Plaintiff's most recent medical

16
records, which indicated that her medications were working and she had been seizure free for

17
months.  AR 14.  Indeed, in July 2005, Dr. de Giorgio indicated that Plaintiff's gait was narrow

18
with a slight shuffling, but was significantly increased in speed and stability, and that her postural

19
stability was also improved.  Plaintiff herself also reported that she was walking better.  The ALJ

20
may discount lay testimony because it conflicts with medical evidence.  *Lewis v. Apfel*, 236 F.3d

21
503, 511 (9th Cir. 2001).

22
          As to the allegation of poor memory, the ALJ explained that Plaintiff completed a Daily

23
Living Activities Questionnaire in which she indicated that her daily activities included

24
crocheting, reading, shopping, etc.  AR 14.  In her reply, Plaintiff points out that she testified at

25
the hearing that she no longer crochets and last did so in 2004.  However, the ALJ is entitled to

26
weigh the credibility of the witnesses, and because he properly discredited Plaintiff's allegations,

27
as explained below, he chose to rely on her statements in the Daily Activities Questionnaire that

28
were consistent with his evaluation of the evidence.

1   The ALJ also explained that Plaintiff demonstrated no difficulty in responding to

2   questions during the one-hour hearing.  AR 14.  In her reply, Plaintiff points to the section of the

3   hearing where she states, "I'm confused already," during her attempt to distinguish tremors from

4   seizures.  AR 277.  Again, though, this relates to Plaintiff's credibility, as discussed more fully

5   below, and the ALJ was entitled to look at the objective picture of the hearing rather than her

6   subjective complaints.  *See eg. Orn v. Astrue*, ___F.3d ___, 2007 WL 2034287, *13 (9th Cir.

7   2007) (although ALJ's observations cannot form the sole basis for rejecting testimony, the ALJ's

8   personal observations may be used in the overall evaluation of the credibility of the individual's

9   statements).

10      Therefore, contrary to Plaintiff's claim, the ALJ gave reasons for rejecting Mr. Cubero's

11  allegations that were germane to his testimony.  Although Plaintiff disagrees with the ALJ's

12  interpretation of the medical evidence, this does not render his analysis improper.  The ALJ is

13  responsible for resolving conflicts in the medical evidence.  *Magallanes v. Bowen*, 881 F.2d 747,

14  750 (9th Cir. 1989).  Indeed, the court must uphold the ALJ's decision where the evidence is

15  susceptible to more than one rational interpretation.  *Id.*

16  B.   Plaintiff's Testimony

17      Next, Plaintiff contends that the ALJ improperly discredited her testimony because the

18  medical records support her credibility.

19      The ALJ is required to make specific findings assessing the credibility of plaintiff's

20  subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is

21  not 'required to believe every allegation of disabling pain' or other non-exertional impairment,"

22  *Orn v. Astrue*, ___F.3d___, 2007 WL 2034287, *9 (9th Cir. 2007) (citation omitted).  In rejecting

23  the complainant's testimony, "the ALJ must identify what testimony is not credible and what

24  evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

25  1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

26  1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

27  severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

28

1  with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

2  discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

3      "The ALJ may consider at least the following factors when weighing the claimant's

4  credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

5  testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

6  record, and testimony from physicians and third parties concerning the nature, severity, and effect

7  of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d

8  789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in

9  the record, we may not engage in second-guessing." *Id.*

10     In rejecting Plaintiff's testimony, the ALJ focused on her daily activities and the lack of

11  supporting medical evidence.  AR 14-15.  In contrasting Plaintiff's testimony with her daily

12  activities, he referred to her Daily Activities Questionnaire because her testimony as to her

13  activities was vague.  AR 14.  He noted that Plaintiff engaged in a wide variety of daily activities,

14  including talking on the phone to relatives, fixing snacks and meals, shopping once or twice a

15  week, occasionally doing laundry, washing dishes or dusting, crocheting while watching

16  television, reading magazines and newspapers, and attending medical appointments and church.

17  AR 14.  Although Plaintiff testified that she can no longer do that much, the ALJ was entitled to

18  weigh her testimony, both at the hearing and in her Daily Activities Questionnaire, in assessing

19  her credibility.  "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885

20  F.2d 597, 604 (9th Cir.1989).  While the ALJ's interpretation of her testimony may not be the

21  only reasonable one, it is still a reasonable interpretation and it is not this Court's role to second

22  guess it. *Id.*

23     The ALJ then went through the medical evidence and set forth the reasons why he

24  believed her allegations were not supported.  He first described inconsistencies in Plaintiff's

25  statements.  For example, Plaintiff gave an alleged onset date of August 11, 2003, but an October

26  14, 2003, report stated that Plaintiff "continues to work as an R.N. for Porterville Developmental

27  Center."  AR 15.

28

He further noted several reasons why the medical records did not support her allegations. For instance, although Plaintiff referred to her shaking as seizures, an EEG in March 2004 was normal and Plaintiff's description of the shaking, i.e., that it resolves with food and only occurs in her hand or foot, is not consistent with seizure activity.  AR 15.  The ALJ also explained that the August 2003 scan of her brain showed no recent infarction and no significant carotid stenoses.  AR 15.  There were also numerous instances in the record where Plaintiff reported that she recovered from the 2001 stroke and went back to work as a registered nurse.

The ALJ also cited the evidence that demonstrated that Plaintiff's condition was improving.  In June 2005, her physician indicated that she was doing very well and had been seizure free for four months.  At the hearing, she testified that she had not had a seizure for eight months.  AR 15.  Similarly, although a June 13, 2005, "Mini-Mental Status Exam" showed problems with executive processing and calculations, recent memory and orientation were relatively intact and there was no diagnosis of a cognitive deficit.  AR 15-16.  Moreover, in July 2005, Plaintiff reported that she was feeling better and faster, and was able to process information better.  Her memory was good and she demonstrated a significant increase in her speed of gait and postural stability.  AR 16.

The ALJ was reasonable in concluding that the medical evidence showed that Plaintiff's symptoms had improved, and that her impairments were not as disabling as she alleged.  *See eg. Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid consideration in assessing claimant's credibility).  Again, even though Plaintiff points to evidence that she feels supports her allegations, the ALJ is the ultimate trier of fact.  *Fair*, 885 F.2d at 604.  The courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone.  *Richardson v. Perales*, 402 U.S. 389, 399 (1971).  In any event, the Court must uphold the ALJ's decision were the evidence is susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

The ALJ's credibility analysis is supported by substantial evidence and is free of legal error.  Plaintiff's claim is without merit and must be denied.

13

C.    <u>Treating Physician's Opinion</u>

Finally, Plaintiff argues, with little explanation, that the ALJ erred in failing to adopt Dr. Sidhu's June 11, 2005, opinion that Plaintiff would never be able to work again.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In formulating Plaintiff's RFC, the ALJ gave the greatest weight to the opinions of the two State Agency physicians, who opined that Plaintiff could perform light work with additional non-exertional limitations. AR 16. In fact, the ALJ's RFC mirrors the limitations set forth by the State Agency physicians. AR 13, 16. The ALJ also states that he gave greater weight to Dr. de Giorgio, Plaintiff's treating neurologist at UCLA School of Medicine. AR 16. In adopting these opinions, the ALJ expressly rejected the opinions of Dr. Sidhu. AR 16. He explains:

> Although Dr. Sidhu indicated on several occasions that claimant is incapacitated and "unable to work," his opinion is given very little weight. Even though Dr. Sidhu is claimant's general practitioner, at no time in any of his treatment notes does he make reference to or impose any limitations on claimant. His notes are very brief, but in December 2004 he did note improvement in claimant's functioning. Further, there is no indication he used the legal standards and considerations as prescribed by the Social Security Act in his assessment of claimant's condition. A mere statement of disability alone or checking a few boxes on a form does not present a persuasive argument and accordingly is not binding upon the undersigned or the Social Security Administration, and is not entitled to significant evidentiary weight.

1 | AR 16.

2     The ALJ's analysis sets forth specific and legitimate reasons supported by substantial

3 | evidence for rejecting Dr. Sidhu's opinion.  As he explains, his notes are brief, at best, and do not

4 | reference any limitations.  In fact, notes in December 2004 indicate that Plaintiff had improved.

5 | AR 224.  A lack of supporting clinical findings is a valid reason for rejecting a treating

6 | physician's opinion.  *Magallanes,* 881 F.2d at 751.  Indeed, in this case, a majority of the medical

7 | evidence contradicted Dr. Sidhu's extreme statements.

8     Additionally, the statements upon which Plaintiff relies were made in the context of

9 | Plaintiff's disability insurance claim with Guarantee Trust Life Insurance Company.  AR 235.

10 | On that form, Dr. Sidhu diagnosed Plaintiff with seizures and unsteady gait and indicated that she

11 | could never return to work, but also stated that she would be disabled from June 7, 2005, through

12 | February 10, 2006.  This statement contradicts Plaintiff's testimony that she had been seizure free

13 | for months prior.  When asked what restrictions he imposed, he stated, "unable to work."  He left

14 | blank the section that asked for his current prognosis, but indicated that her current progress was

15 | unimproved.  AR 235.  This statement contradicts Dr. de Giorgio's numerous indications that

16 | Plaintiff was improving.  A brief and conclusory form opinion which lacks supporting clinical

17 | findings is a legitimate reason to reject a treating physician's conclusion.  *Id.*

18     In *Orn v. Astrue,* ___F.3d ___ (9th Cir. 2007)(2007 WL 2034287) the Ninth Circuit

19 | recently reiterated and expanded upon the weight to be given treating physician opinions.  If a

20 | treating physician's opinion is not giving controlling weight because it is not well supported or

21 | because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by

22 | Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in

23 | determining what weight to accord the opinion of the treating physician.  Those factors include

24 | the "[l]ength of the treatment relationship and the frequency of examination" by the treating

25 | physician; and the "nature and extent of the treatment relationship" between the patient and the

26 | treating physician.  20 C.F.R. 404.1527(d)(2)(i)-(ii).  Other factors include the supportability of

27 | the opinion, consistency with the record as a whole, the specialization of the physician, and the

28

extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6).

Here, the above factors did not require the ALJ to give additional weight to Dr. Sidhu's opinion. Although he had a treating relationship with Plaintiff, his opinion that Plaintiff could never return to work was extreme when examined in light of the overall medical record. It was not supported by the record nor was it consistent with the record. Moreover, as explained above, his opinions were made in the context of a disability insurance claim through a private insurer and were set forth on the insurer's forms. The opinions were not set forth in a manner that suggests that Dr. Sidhu was familiar with Social Security disability standards.

The ALJ's rejection of Dr. Sidhu's opinions was supported by substantial evidence and free of legal error. Her claim is without merit and must be denied.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Lornavenus Cubero.

IT IS SO ORDERED.

**Dated:   August 27, 2007**                    **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE